United States District Court
Southern District of Texas
ENTERED
October 22, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JENNIFER JACKS, Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:26-CV-07616 |
| | § | |
| CSC SERVICEWORKS, INC., Defendant. | § | |

# **MEMORANDUM OPINION AND ORDER**

Pending before the court is a motion for a preliminary injunction (Dkts. 1, 9, 15) filed by the Plaintiff, Jennifer Jacks ("Jacks"). The Court held an evidentiary hearing on the motion on October 2, 2026 (Dkt. 18) and has reviewed the parties' written submissions and the other filings in the case. Following the hearing, Defendant CSC Serviceworks, Inc.'s ("CSC") filed their answer to Plaintiff's complaint and included their own request for a preliminary injunction. (Dkt. 17). As explained below, the Court finds that CSC's non-compete agreement is unenforceable and therefore reforms it in accordance with Texas law. However, the Court further finds that neither Jacks nor CSC has met the burden for a preliminary injunction and therefore both motions (Dkts. 1, 9, 15, and 17) are **DENIED**. Having reformed the non-compete,[1] the Court notes that either party is able to seek a preliminary injunction based on the reformed non-compete if necessary in the future.

[1] The Court reforms the non-compete at this stage despite not granting either preliminary injunction because that is what is required by Texas law and the Fifth Circuit. *See Calhoun v. Jack Doheny Companies, Inc.*, 969 F.3d 232, 236-37 (5th Cir.), opinion withdrawn as moot, 973 F.3d

## I. FACTUAL BACKGROUND

CSC is a national company that, among other things, sells and leases laundry products to multifamily residences. (Dkt. 8 at p. 1). Jacks worked for CSC as a salesperson in their Appliance Warehouse division for approximately 7 months. (*Id*. at pp. 1-2; Dkt. 1 at pp. 3-4). Jacks then went to work for Precision, which CSC alleges is a direct competitor and violated Jacks' non-compete agreement. (Dkt. 8 at p. 2). CSC subsequently sent Jacks a cease-and-desist letter and in response Jacks resigned from Precision. (*Id*.; Dkt. 1 at pp. 4-5). Jacks then filed this lawsuit seeking declaratory judgment and a preliminary injunction to enjoin CSC from enforcing the non-compete on the basis that the non-compete was unenforceable and overbroad. (Dkt. 1). This Court held a hearing on the preliminary injunction on October 2, 2026 (Dkt. 18) and then on October 5, 2026, CSC filed a cross-claim for breach of contract and their own preliminary injunction motion seeking to enjoin Jacks from working for Precision or any other competitor in violation of the non-compete. (Dkt. 17 at pp. 8-10).

## II. LEGAL STANDARD

The purpose of a preliminary injunction is to preserve the status quo and prevent irreparable harm until the respective rights of the parties can be ascertained during a trial on the merits. *City of Dallas v. Delta Air Lines, Inc.*, 847 F.3d 279, 285 (5th Cir. 2017). In

343 (5th Cir. 2020) (saying "[t]his conclusion would lead to Texas authority that strongly suggests, if not requires, reformation of an agreement at the preliminary injunction stage." and holding "that the district court, in considering JDC's motion for a preliminary injunction, should have decided whether and what reformation terms were most likely to make the agreement enforceable under Texas law.").

the Fifth Circuit, the following well-established framework generally governs the determination of whether to grant a preliminary injunction:

> To be entitled to a preliminary injunction, the movant must satisfy each of the following equitable factors: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) the threatened injury to the movant outweighs the threatened harm to the party sought to be enjoined; and (4) granting the injunctive relief will not disserve the public interest. Because a preliminary injunction is an extraordinary remedy, it should not be granted unless the movant has clearly carried the burden of persuasion on all four requirements. Failure to sufficiently establish any one of the four factors requires this Court to deny the movant's request for a preliminary injunction.

*Id*.

The requirements for obtaining a preliminary injunction are stringent in all cases, but "[m]andatory preliminary relief, which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976).

## III. ANALYSIS

Based on the evidence presented at the hearing, the Court concludes that neither Jacks nor CSC has carried their burden to obtain a preliminary injunction. Jacks has established a substantial likelihood of success on the merits of her declaratory judgment claim, as the evidence adduced at the preliminary injunction hearing does show that the noncompete agreement is substantially likely to be deemed overboard and unenforceable

under Texas law[2] at final judgment. The Court will tentatively reform the non-compete in accordance with Texas law. However, the Court finds that Jacks has not met her burden for the other three factors needed to obtain a preliminary injunction. Additionally, because the Court has found the non-compete unenforceable, the Court finds that CSC has not established a likelihood of success on the merits, nor satisfied the other three factors for obtaining a preliminary injunction.

## I. Substantial likelihood of success on the merits

"To show a likelihood of success, the [party] must present a prima facie case, but need not prove that he is entitled to summary judgment." *Daniels Health Sciences, L.L.C. v. Vascular Health Sciences, L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013) (citing *Janvey v. Alguire*, 647 F.3d 585, 595–96 (5th Cir. 2011)); *see also Byrum v. Landreth*, 556 F.3d 442, 446 (5th Cir. 2009).

*a. Non-compete agreement*

A covenant not to compete is valid and enforceable if: (1) it is ancillary to an enforceable agreement, and (2) it contains reasonable limitations on time, geography, and activity, restricting no more than necessary to protect company goodwill or other business

---

[2] As an initial matter, the Court notes that the non-compete says that Florida law applies. (Dkt. 1 at p. 21). However, both parties applied and argued under Texas law and neither contests the application of Texas law. The Court therefore does not conduct a choice of law analysis and applies Texas law. *See also DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 681 (Tex. 1990) ("hold[ing] that the enforceability of the agreement in this case must be judged by Texas law, not Florida law.").

interests. *D'Onofrio v. Vacation Publications, Inc.*, 888 F.3d 197, 211–12 (5th Cir. 2018); Tex. Bus. & Com. Code § 15.50(a). The parties do not dispute that the non-compete is ancillary to an enforceable agreement. Additionally, the Court finds that the 2-year temporal restriction is reasonable. *See Sunrgy, LLC v. Alfaro*, No. 4:24-CV-3583, 2024 WL 4953430, at *5 (S.D. Tex. Dec. 3, 2024) ("Courts consistently enforce non-compete covenants of two years or less."). Accordingly, the issue before the Court is whether the non-compete's limitations on geography and scope of activity are reasonable and do not impose a greater restraint than is necessary to protect CSC's goodwill or other business interests.

"Texas courts have, with few exceptions, held that non-compete covenants that contain either an industry-wide exclusion from subsequent employment and/or that prevent contact with clients with whom the employee had no contact are unenforceable." *Sunrgy*, No. 4:24-CV-3583, 2024 WL 4953430, at *5. "Under Section 15.50 of the Texas Business and Commerce Code, a covenant not to compete must contain time, scope, and geography limitations that are reasonable and that do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the employer." *Thompson Safety LLC v. Jones*, No. 4:24-CV-2483, 2024 WL 4108788, at *4 (S.D. Tex. Sept. 6, 2024).

Jacks challenges the following restriction from the non-compete:

> "**Limited Non-Competition Regarding Business**. Team member agrees that during the Restricted Period, team member will not, directly or Indirectly, own, manage, operate, join, control, be employed by or with, or participate in any manner with a Competing Business anywhere in the Restricted Territory where doing so will require team member to provide the same or substantially similar services to a Competing

> Business as those that team member provided to CSC during the last two years of team member's employment with the Company."

(Dkt. 1 at p. 19).

The non-compete provides the following definitions for the restriction:

> "**Competing Business**" means any individual (including team member), corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, that is directly engaged in whole or in relevant part in any business or enterprise that is the same as, or substantially the same as, the Business of CSC, or that is taking material steps to engage in such business.

(*Id*. at p. 17).

> "**Business of CSC**" means the delivery of technology-enabled residential and commercial laundry solutions to consumers, owners, and property managers in the multifamily, academic, in-home, and hospitality laundry markets . . . ."

(*Id*. at p. 16).

> "**Restricted Territory**" means the geographic territory in which team member worked, represented CSC, or had Material Contact with CSC's Customers in the two (2) year period preceding the voluntary or involuntary termination of team member's employment with CSC for any reason and with or without cause."

(*Id*. at pp. 17-18)

CSC argues that the restrictions in non-compete are reasonable and enforceable. This Court disagrees. As written the non-compete is overbroad and unenforceable. First, while there is a purported geographical limitation, at the hearing it became clear to the Court that this language is quite expansive. Jacks was assigned certain territories during her time working for CSC, which she assumed would be her restricted territory for purposes of the non-compete. (Dkt. 1 at pp. 6-7). However, at the hearing and through their subsequent pleading, CSC informed the Court that the restricted territory expanded beyond her assigned territories into "the greater Houston market, as well as Beaumont and Galveston, Texas." (Dkt. 17 p. 5; Dkt. 18 at 5:21-22). CSC alleged this was because Jacks

attended industry events with customers from across Houston and because she was not restricted from visiting customers in other territories with her co-worker. (Dkt. 18 at 4:55-4:56). CSC also tried to argue that the restrictions needed to be broad because the multifamily industry is transient and therefore contacts and customers may move positions and may move to different companies. (Dkt. 18 at 5:07). The Court finds that this territorial restriction is overbroad because it is "not limited as to either geography or clients with whom former employees actually worked during their employment." *D'Onofrio*, 888 F.3d at 211-12. Instead, the restriction applies to customers that Jacks may never have worked with and to an area she may never have worked in simply because she attended industry events where undefined customers from undefined areas may have been present and because she was not restricted from servicing other areas.

Second, the restriction on competing business is overbroad as it amounts to an industry-wide exclusion and limits Jacks from working for any company that competes with CSC even if Jacks is not interacting with her former customers from her time at CSC. *DeWolff, Boberg & Assocs., Inc. v. Clark*, No. 3:22-CV-2489-K, 2023 WL 5437665, at *3 (N.D. Tex. Aug. 23, 2023) (finding a covenant unenforceable because it "contain[ed] the required temporal restriction, but d[id] not include a geographical restriction, and is not limited to Plaintiff's clients with whom Defendant had dealings."). "Under Texas law, covenants not to compete that extend to clients with whom the employee had no dealings during her employment or amount to industry-wide exclusions are overbroad and unreasonable." *D'Onofrio,* 888 F.3d 211–12 (brackets and quotation marks omitted). CSC

argues that Jacks must be restricted from working in the entire industry of laundry sales and leasing in greater Houston. (Dkt. 18 at 5:39-40). At the hearing CSC supported this argument by saying that they considered all apartment complexes in the greater Houston area potential CSC customers. (Dkt. 18 at 5:20). When questioned by the Court on whether Jacks could work at the new company, Precision, with already existing Precision customers, CSC said that the transient nature of the industry means that even if she is restricted from working with her former CSC customers and only works with existing Precision customers, she may still be harming CSC. (Dkt. 18 at 5:31-32). The Court finds this argument unpersuasive and finds "that prevent[ing] contact with clients with whom the [Jacks] had no contact [is] unenforceable." *Sunrgy, LLC*, No. 4:24-CV-3583, 2024 WL 4953430, at *5.

Additionally, restricting Jacks from working with any business "that is directly engaged in whole or in relevant part in any business or enterprise that is the same as, or substantially the same as, the Business of CSC" amounts to an industry-wide exclusion. *See Expedited Freight, LLC v. Feichter*, No. 3:25-CV-172, 2025 WL 2612731, at *8 (S.D. Tex. Aug. 4, 2025) (finding a restriction contained an industry-wide exception because it barred the party from "from competing with any 'competitive business'"). CSC argues that it is not an industry-wide exclusion because "the broader multifamily market offers Jacks a wide universe of employment opportunities" such as working for vendors of "valet trash, package lockers, pest control, landscaping, utility billing, internet services, renovation contractors, and property technology software." (Dkt. 17 at pp. 6-7). The Court disagrees

and finds that this is an unenforceable industry-wide exclusion because Jacks is excluded from the entire laundry sales and leasing industry in greater Houston. (Dkt. 18 at 5:39-40). "These covenants do not limit the prohibitions just to customers with whom [Jacks] had dealings while [s]he was employed by [CSC]. Thus, the covenants are over broad and are unreasonable restraints of trade." *Wright v. Sport Supply Grp., Inc.*, 137 S.W.3d 289, 298 (Tex. App. 2004).

Having found the non-compete unenforceable and overbroad, the Court determines that Jacks has met her burden for showing a likelihood of success on the merits, while CSC has not met their burden.

*b. Reformation*

Now that the Court has found the non-compete unenforceable and overbroad, Texas law "requires courts to reform covenants found to be unreasonable as to time, geographical area, or scope of activity." *D'Onofrio*, 888 F.3d at 212. Accordingly, the Court will cure the deficiencies highlighted above by: (1) limiting restricted territory to the territories that were specifically assigned to Jacks and within her sales territory; and (2) reforming the 'Limited Non-Competition Regarding Business' clause to restrict Jacks only from working in the restricted territory with a competing business and with customers with whom she worked while at CSC, but not restrict her from working for a competing business who may operate within the restricted territory as long as she does not work in the restricted territory. This will ensure that Jacks is prevented from working in the same territory and with her

former customers, but that any future employer is not restrained with regard to other employees' territories and customers.

After making these changes, the Court sees no need to reform the rest of the non-compete because these geographical and customer-based limitations ensure that the non-compete is not overbroad. *See Thompson Safety LLC*, No. 4:24-CV-2483, 2024 WL 4108788, at *5 (saying "[i]n light of the changes to covenants two and three, the Court sees no need to reform the overbroad and unenforceable prohibitions contained in covenant one."); *see also Gallagher Healthcare Insurance Services v. Vogelsang*, 312 S.W.3d 640, 654 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) ("A number of courts have held that a non-compete covenant that is limited to the employee's clients is a reasonable alternative to a geographical limit.").

Now that the Court has complied with its duty to tentatively reform the noncompete at issue, the Court turns to the remaining preliminary injunction factors for Jacks and for CSC. *See GE Betz Inc. v. Moffitt-Johnson*, 301 F. Supp. 3d 668, 687 (S.D. Tex. 2014), aff'd in part sub nom. *GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318 (5th Cir. 2018) (saying "[o]nce a restrictive covenant has been held to be unreasonable, courts generally must reform the covenant to make it valid.").

## II. Threat of irreparable injury, relative weight of threatened harm, public interest

In order to obtain a preliminary injunction a party must not only show a substantial likelihood of success on the merits but also show a substantial threat of irreparable injury, show that the relative weight of the threatened injury is greater to them, and show that the

injunctive relief will not harm the public interest. *City of Dallas v. Delta Air Lines, Inc.*, 847 F.3d 279, 285 (5th Cir. 2017). Here, Jacks has shown a likelihood of success on the merits, but the Court does not find that Jacks has met her burden on the other three factors. Additionally, the Court does not find that CSC has shown a likelihood of success on the merits, nor has it met its burden for the other three factors.

*a. Jacks*

Even if the non-compete was enforceable as written, the Court find that Jacks has not established that damages would be an inadequate remedy because it is well-settled that loss of wages and employment can be remedied by damages. *Bures v. Houston Symphony Soc.*, 503 F.2d 842, 844 (5th Cir. 1974) (saying that a loss of wages is not an "irreparable injury for which an adequate remedy at law does not exist."). Jacks has also not met the burden for showing that the relative weight of the harm to her outweighs that to CSC nor has she shown that granting a public interest will not disserve the public interest. *See Yellowstone Landscape v. Fuentes*, No. CV 4:20-1778, 2020 WL 4547150 (S.D. Tex. Aug. 6, 2020) (denying preliminary injunction because both parties would be harmed and movant's harm did not outweigh Defendant's harm); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (saying "[i]In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.").

*b. CSC*

CSC did not show a likelihood of success on the merits. As such, the Court need not examine the remaining three factors for a preliminary injunction at length for CSC. However, the Court notes that even if CSC did show a likelihood of success on the merits, it would not meet its burden under the other three factors. For example, for irreparable injury CSC would need to show that money damages would not be sufficient, meaning that it would need to show a substantial economic loss and threat to business. *Allied Home Mortg. Corp. v. Donovan*, 830 F. Supp. 2d 223, 228 (S.D. Tex. 2011) (saying "[i]rreparable injury may be shown where a business would suffer a substantial loss of business and perhaps even bankruptcy absent injunctive relief. . . . A recognized exception to the general rule that damages cannot be compensable in monetary relief is where the potential economic loss is so great as to threaten the existence of the movant's business.") (internal quotations omitted). CSC is a nationwide company who has a handful of competitors within the greater Houston market. (Dkt. 18 at 5:18). As such, this Court finds they have not shown an irreparable injury that could not be remedied by money damages. CSC has also not shown that the injury to them outweighs the injury to Jacks, nor that granting the injunction is in the public interest. *See Yellowstone Landscape*, No. CV 4:20-1778, 2020 WL 4547150 (S.D. Tex. Aug. 6, 2020) (denying preliminary injunction for company and finding that harm to company did not outweigh harm to employee); *cf. TransPerfect Translations, Inc. v. Leslie*, 594 F. Supp. 2d 742, 758 (S.D. Tex. 2009) (saying "Texas has clarified the public interest through its non-compete statute, and, under that statute,

enforcing *reasonable* non-compete agreements is within the public interest.")(emphasis added).

Therefore, neither party is entitled to a preliminary injunction at this time. The Court notes, however, that if the reformed noncompete is breached, either party may seek a preliminary injunction on that basis.

## III. CONCLUSION

Jacks' motion for preliminary injunction (Dkts. 1, 9, 15) is **DENIED**. CSC's motion for preliminary injunction (Dkt. 17) is **DENIED**. The noncompete is tentatively reformed as set forth in this opinion.

SIGNED at Houston, Texas on October 22, 2026.

George C. Hanks Jr

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE